UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
I OFFICE

CO Nov 21  P 12:59

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, | ) ) ) | Civil Action No. _____ |
| Plaintiff, | ) ) | |
| v. | ) ) | **03 - 30282 - MAP** |
| HBA CAST PRODUCTS CO., INC., | ) ) | |
| Debtor. | ) ) | |

U.S. DISTRICT COURT
DISTRICT OF MASS

**FILING FEE PAID:**
**RECEIPT #** _305422_
**AMOUNT $** _150.00_
**BY DPTY CLK** _MGH_
**DATE** _11/21/03_

## VERIFIED COMPLAINT

General Electric Capital Corporation ("GECC") brings this action to recover damages resulting from a breach of contract stemming from the default of defendant HBA Cast Products Co., Inc. ("HBA") on payments due pursuant to a promissory note, a security agreement, and other loan documents entered into between the parties.

### Parties

1.      GECC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business other than in Massachusetts. At all times relevant to this matter, GECC was in the business of, inter alia, providing leasing and financing for equipment.

2.      HBA is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business at 262 Liberty Street, Springfield, Massachusetts.

~CHGO1:30374938.v2

## Jurisdiction and Venue

3.    Jurisdiction is predicated upon 28 U.S.C § 1332(a)(1), as this action is one between citizens of different states, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.    The claims forming the basis of this complaint, or a significant portion thereof, arose in that geographical area which is located within the federal judicial district known as the District of Massachusetts.

5.    For venue purposes, HBA resides in that geographical area which is located within the federal judicial district known as the District of Massachusetts.

6.    Venue is properly in this Court pursuant to 28 U.S.C. § 1391.

## Facts

7.    On or about January 30, 2001, GECC, as lender, and HBA, as borrower, entered into a Master Security Agreement (the "Security Agreement"), a copy of which is attached hereto as **Exhibit A**. Pursuant to the Security Agreement, GECC loaned HBA the sum of $1,300,000.00 with which to purchase certain equipment (the "Equipment") in which HBA granted GECC a first and prior security interest.

8.    On or about January 30, 2001, in connection with the loan referenced in the Security Agreement, HBA executed a promissory note in favor of GECC (the "Note"), a copy of which is attached hereto as **Exhibit B**.

9.    Also on or about January 30, 2001, in connection with the loan referenced in the Security Agreement, GECC, as secured party, and HBA, as debtor, executed Collateral Schedule No. 1, a copy of which is attached hereto as **Exhibit C**. In Collateral Schedule No. 1, the parties

identified and described the Equipment. The Note, Security Agreement, and Collateral Schedule No. 1 are referred to collectively as the "Agreements."

10.     HBA authorized GECC to deliver and apply the proceeds of the loan to HBA pursuant to an authorization executed by HBA, a copy of which is attached hereto as **Exhibit D**. Pursuant to the Agreement, GECC forwarded the loan proceeds to HBA.

11.     HBA has certified that all equipment and property covered by the Security Agreement was delivered to HBA and HBA found it satisfactory. A copy of such certification is attached hereto as **Exhibit E**.

12.     The Agreement provides that Connecticut law applies to the Agreement and the rights and obligations of the parties thereunder. See Ex. A ¶ 8(g).

13.     HBA is in default under the Agreements for failure to pay the amounts due thereunder.

14.     More specifically, HBA has failed to make loan repayment installments due and owing to GECC beginning on August 1, 2003. As of November 10, 2003, the aggregate payment defaults to GECC, not including attorneys' fees and costs but including late charges and insufficient funds fees, totaled not less than $113,922.54.

15.     Pursuant to the default provisions of the Agreement, GECC declared the entire principal sum remaining unpaid, together with all accrued interest thereon and any other sum payable under the Note or the Security Agreement immediately due and payable. See Ex. A ¶ 7(b); Ex. B 5th paragraph.

16.     As of October 30, 2003 and pursuant to GECC's acceleration of the amounts due pursuant to the Agreement, HBA owes GECC $793,775.73. This payoff amount expires

December 1, 2003. <u>See</u> October 30, 2003 payoff letter, a copy of which is attached hereto as **Exhibit F.**

17.    Under the Agreement, HBA is obligated to pay the attorneys' fees and costs incurred by GECC in the enforcement of its rights thereunder, including all attorneys' fees and costs incurred by GECC in this lawsuit. <u>See</u> Ex. A  7(e).

18.    GECC has substantially performed any and all obligations to be performed by GECC under the terms of the Agreement.

<u>COUNT I</u>

**(BREACH OF CONTRACT)**

1-18.    GECC incorporates and realleges paragraphs 1 through 18 as paragraphs 1 through 18 of this Count I.

19.    Under the Agreement, GECC is entitled to contractual money damages from HBA as provided therein, both for the arrearages in installments of rent and for those damages inflicted upon the Equipment, as well as any and all additional damages specified as a remedy after default.

20.    Pursuant to the Agreement, HBA is obligated to pay the attorneys' fees and costs incurred by GECC in the enforcement of its rights thereunder, including all attorneys' fees and costs incurred by GECC in this lawsuit.

WHEREFORE, Plaintiff General Electric Capital Corporation requests that this Court enter a judgment in GECC's favor and against HBA in the aggregate of the amounts due under the Agreements, in the exact amounts to be proven at trial, plus its attorneys' fees and costs, together with such other and further relief as shall be just and equitable.

Dated: November 20, 2003

Respectfully submitted,

GENERAL ELECTRIC CAPITAL
CORPORATION

C. Dylan Sanders (BBO # 630668)
Steven J. Buttacavoli (BBO # 651440)
PIPER RUDNICK LLP
One International Place, 21st Floor
Boston, Massachusetts 02110-2613
(617) 406-6000

Of Counsel:

Alexander Terras
Timothy S. Harris
Kurt A. Winiecki
PIPER RUDNICK LLP
203 North LaSalle Street
Suite 1800
Chicago, Illinois 60601
(312) 368-4000

## VERIFICATION

I, Paul Cummings of General Electric Capital Corporation, hereby certify that I have read the foregoing Complaint and that the factual allegations contained therein are true and accurate to the best of my knowledge, except for those allegations made upon information and belief, as to which I am informed and believe are true.

Signed under the pains and penalties of perjury this 19th day of November, 2003.

_____
Paul Cummings

11/98

# MASTER SECURITY AGREEMENT

dated as of _____ ("Agreement")

**THIS AGREEMENT** is between General Electric Capital Corporation (together with its successors and assigns, if any, "Secured Party") and KBA Cast Products Co., Inc. ("Debtor"). Secured Party has an office at 44 Old Ridgebury Road, Danbury, CT 06810-5105. Debtor is a corporation organized and existing under the laws of the state of Massachusetts. Debtor's mailing address and chief place of business is 262 Liberty Street, Springfield, MA 01104.

## 1. CREATION OF SECURITY INTEREST.

Debtor grants to Secured Party, its successors and assigns, a security interest in and against all property listed on any collateral schedule now or in the future annexed to or made a part of this Agreement ("Collateral Schedule"), and in and against all additions, attachments, accessories and accessions to such property, all substitutions, replacements or exchanges therefor, and all insurance and/or other proceeds thereof (all such property (i) individually and collectively called the "Collateral"). This security interest is given to secure the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Debtor to Secured Party, now existing or arising in the future, including but not limited to the payment and performance of certain Promissory Notes from time to time identified on any Collateral Schedule (collectively "Notes" and each a "Note"), and any renewals, extensions and modifications of such debts, obligations and liabilities (such Notes, debts, obligations and liabilities are called the "Indebtedness"). Notwithstanding anything to the contrary contained in this Agreement, to the extent that Secured Party asserts a purchase money security interest in any items of Collateral ( "PMSI Collateral"): (i) the PMSI Collateral shall secure only that portion of the Indebtedness which has been advanced by Secured Party to enable Debtor to purchase, or acquire rights in or the use of such PMSI Collateral (the "PMSI Indebtedness"), and (ii) no other Collateral shall secure the PMSI Indebtedness.

## 2. REPRESENTATIONS, WARRANTIES AND COVENANTS OF DEBTOR.

Debtor represents, warrants and covenants as of the date of this Agreement and as of the date of each Collateral Schedule that:

(a) Debtor is, and will remain, duly organized, existing and in good standing under the laws of the State set forth in the preamble, has its chief executive offices at the location specified in the preamble, and is, and will remain, duly qualified and licensed in every jurisdiction wherever necessary to carry on its business and operations;

(b) Debtor has adequate power and capacity to enter into, and to perform its obligations under this Agreement, each Note and other documents evidencing, or given in connection with, any of the Indebtedness (all of the foregoing are called the "Debt Documents");

(c) This Agreement and the other Debt Documents have been duly authorized, executed and delivered by Debtor and constitute legal, valid and binding agreements enforceable in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws;

(d) No approval, consent or withholding of objections is required from any governmental authority or instrumentality with respect to the entry into, or performance by Debtor of any of the Debt Documents, except any already obtained;

(e) The entry into, and performance by, Debtor of the Debt Documents will not (i) violate any of the organizational documents of Debtor or any judgment, order, law or regulation applicable to Debtor, or (ii) result in any breach of or constitute a default under any contract to which Debtor is a party, or result in the creation of any lien, claim or encumbrance on any of Debtor's property (except for liens in favor of Secured Party) pursuant to any indenture, mortgage, deed of trust, bank loan, credit agreement, or other agreement or instrument to which Debtor is a party;

(f) There are no suits or proceedings pending in court or before any commission, board or other administrative agency against or affecting Debtor which could, in the aggregate, have a material adverse effect on Debtor, its business or operations, or its ability to perform its obligations under the Debt Documents, nor does Debtor have reason to believe that any such suits or proceedings are threatened;

(g) All financial statements delivered to Secured Party in connection with the Indebtedness have been prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statement, there has been no material adverse change in Debtors financial condition;

(h) The Collateral is not, and will not be, used by Debtor for personal, family or household purposes;

(i) The Collateral is, and will remain, in good condition and repair and Debtor will not be negligent in its care and use;

(j) Debtor is, and will remain, the sole and lawful owner, and in possession of, the Collateral, and has the sole right and lawful authority to grant the security interest described in this Agreement; and

(k) The Collateral is, and will remain, free and clear of all liens, claims and encumbrances of any kind whatsoever, except for (i) liens in favor of Secured Party, (ii) liens for taxes not yet due or for taxes being contested in good faith and which do not involve, in the judgment of Secured Party, any risk of the sale, forfeiture or loss of any of the Collateral, and (iii) inchoate materialmen's, mechanic's, repairmen's and similar liens arising by operation of law in the normal course of business for amounts which are not delinquent (all of such liens are called "Permitted Liens").

## 3. COLLATERAL.

(a) Until the declaration of any default, Debtor shall remain in possession of the Collateral; except that Secured Party shall have the right to possess (i) any chattel paper or instrument that constitutes a part of the Collateral, and (ii) any other Collateral in which Secured Party's security interest may be perfected only by possession. Secured Party may inspect any of the Collateral during normal business hours after giving Debtor reasonable prior notice. If Secured Party asks, Debtor will promptly notify Secured Party in writing of the location of any Collateral.



(b) Debtor shall (i) use the Collateral only in its trade or business, (ii) maintain all of the Collateral in good operating order and repair, normal wear and tear excepted, (iii) use and maintain the Collateral only in compliance with manufacturers recommendations and all applicable laws, and (iv) keep all of the Collateral free and clear of all liens, claims and encumbrances (except for Permitted Liens).

(c) Debtor shall not, without the prior written consent of Secured Party, (i) part with possession of any of the Collateral (except to Secured Party or for maintenance and repair), (ii) remove any of the Collateral from the its current location in Quentaro, Mexico , or (iii) sell, rent, lease, mortgage, grant a security interest in or otherwise transfer or encumber (except for Permitted Liens) any of the Collateral.

(d) Debtor shall pay promptly when due all taxes, license fees, assessments and public and private charges levied or assessed on any of the Collateral, on its use, or on this Agreement or any of the other Debt Documents. At its option, Secured Party may discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral and may pay for the maintenance, insurance and preservation of the Collateral and effect compliance with the terms of this Agreement or any of the other Debt Documents. Debtor agrees to reimburse Secured Party, on demand, all costs and expenses incurred by Secured Party in connection with such payment or performance and agrees that such reimbursement obligation shall constitute Indebtedness.

(e) Debtor shall, at all times, keep accurate and complete records of the Collateral, and Secured Party shall have the right to inspect and make copies of all of Debtor's books and records relating to the Collateral during normal business hours, after giving Debtor reasonable prior notice.

(f) Debtor agrees and acknowledges that any third person who may at any time possess all or any portion of the Collateral shall be deemed to hold, and shall hold, the Collateral as the agent of, and as pledge holder for, Secured Party. Secured Party may at any time give notice to any third person described in the preceding sentence that such third person is holding the Collateral as the agent of, and as pledge holder for, the Secured Party.

## 4.   INSURANCE.

(a) Debtor shall at all times bear the entire risk of any loss, theft, damage to, or destruction of, any of the Collateral from any cause whatsoever.

(b) Debtor agrees to keep the Collateral insured against loss or damage by fire and extended coverage perils, theft, burglary and, for Collateral which are vehicles, for risk of loss by collision, and if requested by Secured Party, against such other risks as Secured Party may require. The insurance coverage shall be in an amount no less than the full replacement value of the Collateral, and shall be subject to such policies shall be acceptable to Secured Party. Debtor shall deliver to Secured Party policies or certificates of insurance evidencing such policy shall name Secured Party as a loss payee, shall provide for coverage to Secured Party regardless of the breach by Debtor of any representation made therein, shall not be subject to co-insurance , and shall provide that coverage may not be canceled or altered by insurer upon thirty (30) days prior written notice to Secured Party. Debtor appoints Secured Party as its attorney-in-fact to make proof of loss, claim for insurance and adjustments with insurers, and to receive payment of and execute or endorse all documents, checks or drafts in connection with insurance payments. Secured Party shall not act as Debtors attorney-in-fact unless Debtor is in default. Proceeds of insurance shall be applied, at the option of Secured Party, to repair or replace the Collateral or to reduce any of the Indebtedness.

## 5.   REPORTS.

(a) Debtor shall promptly notify Secured Party of (i) any change in the name of Debtor, (ii) any relocation of its chief executive offices, (iii) any relocation of any of the Collateral, (iv) any of the Collateral being lost, stolen, missing, destroyed, materially damaged or worn out, or (v) any lien, claim or encumbrance other than Permitted Liens attaching to or being made against any of the Collateral.

(b) Debtor will deliver to Secured Party Debtors complete financial statements, certified by a recognized firm of certified public accountants, within ninety (90) days of the close of each fiscal year of Debtor. If Secured Party requests, Debtor will deliver to Secured Party copies of Debtors quarterly financial reports certified by Debtors chief financial officer, within ninety (90) days after the close of each of Debtors fiscal quarter. Debtor will deliver to Secured Party copies of all Forms 10-K and 10-Q, if any, within 30 days after the dates on which they are filed with the Securities and Exchange Commission.

## 6.   FURTHER ASSURANCES.

(a) Debtor shall, upon request of Secured Party, furnish to Secured Party such further information, execute and deliver to Secured Party such documents and instruments (including, without limitation, Uniform Commercial Code financing statements) and shall do such other acts and things as Secured Party may at any time reasonably request relating to the perfection or protection of the security interest created by this Agreement or for the purpose of carrying out the intent of this Agreement. Without limiting the foregoing, Debtor shall cooperate and do all acts deemed necessary or advisable by Secured Party to continue in Secured Party a perfected first security interest in the Collateral, and shall obtain and furnish to Secured Party any subordinations, releases, landlord, lessor, or mortgagee waivers, and similar documents as may be from time to time requested by, and in form and substance satisfactory to, Secured Party.

(b) Debtor irrevocably grants to Secured Party the power to sign Debtor's name and generally to act on behalf of Debtor to execute and file applications for title, transfers of title, financing statements, notices of lien and other documents pertaining to any or all of the Collateral; this power is coupled with Secured Party's interest in the Collateral. Debtor shall, if any certificate of title be required or permitted by law for any of the Collateral, obtain and promptly deliver to Secured Party such certificate showing the lien of this Agreement with respect to the Collateral.

(c) Debtor shall indemnify and defend the Secured Party, its successors and assigns, and their respective directors, officers and employees, from and against all claims, actions and suits (including, without limitation, related attorneys' fees) of any kind whatsoever arising, directly or indirectly, in connection with any of the Collateral.

## 7.   DEFAULT AND REMEDIES.

(a) Debtor shall be in default under this Agreement and each of the other Debt Documents if:

(i) Debtor breaches its obligation to pay when due any installment or other amount due or coming due under any of the Debt Documents;

(ii) Debtor, without the prior written consent of Secured Party, attempts to or does sell, rent, lease, mortgage, grant a security interest in, or otherwise transfer or encumber (except for Permitted Liens) any of the Collateral;

(iii) Debtor breaches any of its insurance obligations under Section 4;

(iv) Debtor breaches any of its other obligations under any of the Debt Documents and fails to cure the breach within thirty (30) days after written notice from Secured Party;

(v) Any warranty, representation or statement made by Debtor in any of the Debt Documents or otherwise in connection with any of the Indebtedness shall be false or misleading in any material respect;

(vi) Any of the Collateral is subjected to attachment, execution, levy, seizure or confiscation in any legal proceeding or otherwise, or if any legal or administrative proceeding is commenced against Debtor or any of the Collateral, which in the good faith judgment of Secured Party subjects any of the Collateral to a material risk of attachment, execution, levy, seizure or confiscation and no bond is posted or protective order obtained to negate such risk;

(vii) Debtor breaches or is in default under any other agreement between Debtor and Secured Party;

(viii) Debtor or any guarantor or other obligor for any of the Indebtedness (collectively "Guarantor") dissolves, terminates its existence, becomes insolvent or ceases to do business as a going concern;

(ix) If Debtor or any Guarantor is a natural person, Debtor or any such Guarantor dies or becomes incompetent;

(x) A receiver is appointed for all or of any part of the property of Debtor or any Guarantor, or Debtor or any Guarantor makes an assignment for the benefit of creditors; or

(xi) Debtor or any Guarantor files a petition under any bankruptcy, insolvency or similar law, or any such petition is filed against Debtor or any Guarantor and is not dismissed within forty-five (45) days.

(b) If Debtor is in default, the Secured Party, at its option, may declare any or all of the Indebtedness to be immediately due and payable, without demand or notice to Debtor or any Guarantor. The accelerated obligations and liabilities shall bear interest (both before and after any judgment) until paid in full at the lower of eighteen percent (18%) per annum or the maximum rate not prohibited by applicable law.

(c) After default, Secured Party shall have all of the rights and remedies of a Secured Party under the Uniform Commercial Code, and under any other applicable law. Without limiting the foregoing, Secured Party shall have the right to (i) notify any account debtor of Debtor or any obligor on any instrument which constitutes part of the Collateral to make payment to the Secured Party, (ii) with or without legal process, enter any premises where the Collateral may be and take possession of and remove the Collateral from the premises or store it on the premises, (iii) sell the Collateral at public or private sale, in whole or in part, and have the right to bid and purchase at said sale, or (iv) lease or otherwise dispose of all or part of the Collateral, applying proceeds from such disposition to the obligations then in default. If requested by Secured Party, Debtor shall promptly assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties. Secured Party may also render any or all of the Collateral unusable at the Debtor's premises and may dispose of such Collateral on such premises without liability for rent or costs. Any notice that Secured Party is required to give to Debtor under the Uniform Commercial Code of the time and place of any public sale or the time after which any private sale or other intended disposition of the Collateral is to be made shall be deemed to constitute reasonable notice if such notice is given to the last known address of Debtor at least five (5) days prior to such action.

(d) Proceeds from any sale or lease or other disposition shall be applied: first, to all costs of repossession, storage, and disposition including without limitation attorneys', appraisers', and auctioneers' fees; second, to discharge the obligations then in default; third, to discharge any other Indebtedness of Debtor to Secured Party, whether as obligor, endorser, guarantor, surety or indemnitor; fourth, to expenses incurred in paying or settling liens and claims against the Collateral; and lastly, to Debtor, if there exists any surplus. Debtor shall remain fully liable for any deficiency.

(e) Debtor agrees to pay all reasonable attorneys' fees and other costs incurred by Secured Party in connection with the enforcement, assertion, defense or preservation of Secured Party's rights and remedies under this Agreement, or if prohibited by law, such lesser sum as may be permitted. Debtor further agrees that such fees and costs shall constitute Indebtedness.

(f) Secured Party's rights and remedies under this Agreement or otherwise arising are cumulative and may be exercised singularly or concurrently. Neither the failure nor any delay on the part of the Secured Party to exercise any right, power or privilege under this Agreement shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege preclude any other or further exercise of that or any other right, power or privilege. SECURED PARTY SHALL NOT BE DEEMED TO HAVE WAIVED ANY OF ITS RIGHTS UNDER THIS AGREEMENT OR UNDER ANY OTHER AGREEMENT, INSTRUMENT OR PAPER SIGNED BY DEBTOR UNLESS SUCH WAIVER IS EXPRESSED IN WRITING AND SIGNED BY SECURED PARTY. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion.

(g) DEBTOR AND SECURED PARTY UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE OTHER DEBT DOCUMENTS, ANY OF THE INDEBTEDNESS SECURED HEREBY, ANY DEALINGS BETWEEN DEBTOR AND SECURED PARTY RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN DEBTOR AND SECURED PARTY. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT. THIS WAIVER IS IRREVOCABLE. THIS WAIVER MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING. THE WAIVER ALSO SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY OTHER DEBT DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**8.   MISCELLANEOUS.**

(a) This Agreement, any Note and/or any of the other Debt Documents may be assigned, in whole or in part, by Secured Party without notice to Debtor, and Debtor agrees not to assert against any such assignee, or assignee's assigns, any defense, set-off, recoupment claim or counterclaim which Debtor has or may at any time have against Secured Party for any reason whatsoever. Debtor agrees that if Debtor receives written notice of an assignment from Secured Party, Debtor will pay all amounts payable under any assigned Debt Documents to such assignee or as instructed by Secured Party. Debtor also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee.

(b) All notices to be given in connection with this Agreement shall be in writing, shall be addressed to the parties at their respective addresses set forth in this Agreement (unless and until a different address may be specified in a written notice to the other party), and shall be deemed given: (i) on the date of receipt if delivered in hand or by facsimile transmission, (ii) on the next business day after being sent by express mail, and (iii) on the fourth business day after being sent by regular, registered or certified mail. As used herein, the term "business day" shall mean and include any day other than Saturdays, Sundays, or other days on which commercial banks in New York, New York are required or authorized to be closed.

(c) Secured Party may correct patent errors and fill in all blanks in this Agreement or in any Collateral Schedule consistent with the agreement of the parties.

(d) Time is of the essence of this Agreement. This Agreement shall be binding, jointly and severally, upon all parties described as the "Debtor" and their respective heirs, executors, representatives, successors and assigns, and shall inure to the benefit of Secured Party, its successors and assigns.

(e) This Agreement and its Collateral Schedules constitute the entire agreement between the parties with respect to the subject matter of this Agreement and supersede all prior understandings (whether written, verbal or implied) with respect to such subject matter. THIS AGREEMENT AND ITS COLLATERAL SCHEDULES SHALL NOT BE CHANGED OR TERMINATED ORALLY OR BY COURSE OF CONDUCT, BUT ONLY BY A WRITING SIGNED BY BOTH PARTIES. Section headings contained in this Agreement have been included for convenience only, and shall not affect the construction or interpretation of this Agreement.

(f) This Agreement shall continue in full force and effect until all of the Indebtedness has been indefeasibly paid in full. If Secured Party surrender, upon payment or otherwise, of any Note or any of the other documents evidencing any of the Indebtedness shall not affect Secured Party to retain the Collateral for such other Indebtedness as may then exist or as it may be reasonably contemplated will exist in the future, shall automatically be reinstated if Secured Party is ever required to return or restore the payment of all or any portion of the Indebtedness such payment had never been made).

(g) THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CONNECTICUT (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT.

**IN WITNESS WHEREOF,** Debtor and Secured Party, intending to be legally bound hereby, have duly executed this Agreement in one or more counterparts, each of which shall be deemed to be an original, as of the day and year first aforesaid.

SECURED PARTY:

General Electric Capital Corporation

By: *James R. Costello*

Name: *James R. Costello*

Title: *Senior Risk Analyst*

DEBTOR:

ERA Cast Products Co., Inc.

By: *John P Deliso*

Name: *John P Deliso*

Title: *President*

B

CP(FRME)10/97(R121698) 4116434001



# PROMISSORY NOTE

January 30, 2001
(Date)

FOR VALUE RECEIVED, HBA Cast Products Co., Inc. a corporation located at the address stated below ("Maker") promises, jointly and severally if more than one, to pay to the order of General Electric Capital Corporation or any subsequent holder hereof (each, a "Payee") at its office located at 44 Old Ridgebury Road , Danbury, CT 06810-5105 or at such other place as Payee or the holder hereof may designate, the principal sum of One Million Three Hundred Thousand and 00/100 Dollars ($1,300,000.00), with interest on the unpaid principal balance, from the date hereof through and including the dates of payment, at a fixed interest rate of Nine and 55/100 percent (9.55%) per annum, to be paid in lawful money of the United States, in Sixty (60) consecutive monthly installments of principal and interest as follows:

| Periodic Installment | Amount |
|---|---|
| 1-59 | $27,330.73 |

each ("Periodic Installment") and a final installment which shall be in the amount of the total outstanding principal and interest. The first Periodic Installment shall be due and payable on March 1, 2001 and the following Periodic Installments and the final installment shall be due and payable on the same day of each succeeding month (each, a "Payment Date"). Such installments have been calculated on the basis of a 360 day year of twelve 30-day months. Each payment may, at the option of the Payee, be calculated and applied on an assumption that such payment would be made on its due date.

The acceptance by Payee of any payment which is less than payment in full of all amounts due and owing at such time shall not constitute a waiver of Payee's right to receive payment in full at such time or at any prior or subsequent time.

The Maker hereby expressly authorizes the Payee to insert the date value is actually given in the blank space on the face hereof and on all related documents pertaining hereto.

This Note may be secured by a security agreement, chattel mortgage, pledge agreement or like instrument (each of which is hereinafter called a "Security Agreement").

Time is of the essence hereof. If any installment or any other sum due under this Note or any Security Agreement is not received within ten (10) days after its due date, the Maker agrees to pay, in addition to the amount of each such installment or other sum, a late payment charge of five percent (5%) of the amount of said installment or other sum, but not exceeding any lawful maximum. If (i) Maker fails to make payment of any amount due hereunder within ten (10) days after the same becomes due and payable; or (ii) Maker is in default under, or fails to perform under any term or condition contained in any Security Agreement, then the entire principal sum remaining unpaid, together with all accrued interest thereon and any other sum payable under this Note or any Security Agreement, at the election of Payee, shall immediately become due and payable, with interest thereon at the lesser of eighteen percent (18%) per annum or the highest rate not prohibited by applicable law from the date of such accelerated maturity until paid (both before and after any judgment).

The Maker may prepay in full, but not in part, its entire indebtedness hereunder upon payment of the entire indebtedness plus an additional sum as a premium equal to the following percentages of the original principal balance for the indicated period:

| | | |
|---|---|---|
| Prior to the first annual anniversary date of this Note: | Three percent | (3%) |
| Thereafter and prior to the second annual anniversary date of this Note: | Two percent | (2%) |
| Thereafter and prior to the third annual anniversary date of this Note: | One percent | (1%) |

and zero percent (0%) thereafter, plus all other sums due hereunder or under any Security Agreement.

It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that, notwithstanding any provision to the contrary in this Note or any Security Agreement, in no event shall this Note or any Security Agreement require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under this Note or any Security Agreement, or if all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under this Note or any Security Agreement on the principal balance shall exceed the maximum amount of interest permitted by applicable law, then in such event (a) the provisions of this paragraph shall govern and control, (b) neither Maker nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal balance or refunded to Maker, at the option of the Payee, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof. It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under this Note or any Security Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness evidenced hereby, all interest at any time contracted for, charged or received from Maker or otherwise by Payee in connection with such indebtedness; provided, however, that if any applicable state law is amended or the law of the United States of America preempts any applicable state law, so that it becomes lawful for the Payee to





CP(FRME)10/97(R121698) 4116434001

# PROMISSORY NOTE

_____
(Date)

FOR VALUE RECEIVED, **HBA Cast Products Co., Inc.** a corporation located at the address stated below ("**Maker**") promises, jointly and severally if more than one, to pay to the order of **General Electric Capital Corporation** or any subsequent holder hereof (each, a "**Payee**") at its office located at 44 Old Ridgebury Road , Danbury, CT 06810-5105 or at such other place as Payee or the holder hereof may designate, the principal sum of **One Million Three Hundred Thousand and 00/100 Dollars ($1,300,000.00)**, with interest on the unpaid principal balance, from the date hereof through and including the dates of payment, at a fixed interest rate of Nine and 55/100 percent (9.55%) per annum, to be paid in lawful money of the United States, in Sixty (60) consecutive monthly installments of principal and interest as follows:

| Periodic Installment | Amount |
|---|---|
| 1-59 | $27,330.73 |

each ("Periodic Installment") and a final installment which shall be in the amount of the total outstanding principal and interest. The first Periodic Installment shall be due and payable on _____ and the following Periodic Installments and the final Installment shall be due and payable on the same day of each succeeding month (each, a "Payment Date"). Such installments have been calculated on the basis of a year of twelve 30-day months. Each payment may, at the option of the Payee, be calculated and applied on an assumption that any payment will be made on its due date.

The acceptance by Payee of any payment which is less than payment in full of all amounts due and owing at such time shall not constitute a waiver of Payee's right to receive payment in full at such time or at any prior or subsequent time.

The Maker hereby expressly authorizes the Payee to insert the date value is actually given in the blank space on the face hereof and on all related documents pertaining hereto.

This Note may be secured by a security agreement, chattel mortgage, pledge agreement or like instrument (each of which is hereinafter called a "Security Agreement").

Time is of the essence hereof. If any installment or any other sum due under this Note or any Security Agreement is not received within ten (10) days after its due date, the Maker agrees to pay, in addition to the amount of each such installment or other sum, a late payment charge of five percent (5%) of the amount of said installment or other sum, but not exceeding any lawful maximum. If (i) Maker fails to make payment of any amount due hereunder within ten (10) days after the same becomes due and payable, or (ii) Maker is in default under, or fails to perform under any term or condition contained in any Security Agreement, then the entire principal sum remaining unpaid, together with all accrued interest thereon and any other sum payable under this Note or any Security Agreement, at the election of Payee, shall immediately become due and payable, with interest thereon at the lesser of eighteen percent (18%) per annum or the highest rate not prohibited by applicable law from the date of such accelerated maturity until paid (both before and after any judgment).

The Maker may prepay in full, but not in part, its entire indebtedness hereunder upon payment of the entire indebtedness plus an additional sum as a premium equal to the following percentages of the original principal balance for the indicated period:

| | | |
|---|---|---|
| Prior to the first annual anniversary date of this Note: | Three percent | (3%) |
| Thereafter and prior to the second annual anniversary date of this Note: | Two percent | (2%) |
| Thereafter and prior to the third annual anniversary date of this Note: | One percent | (1%) |

and zero percent (0%) thereafter, plus all other sums due hereunder or under any Security Agreement.

It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that, notwithstanding any provision to the contrary in this Note or any Security Agreement, in no event shall this Note or any Security Agreement require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under this Note or any Security Agreement, or if all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under this Note or any Security Agreement on the principal balance shall exceed the maximum amount of interest permitted by applicable law, then in such event (a) the provisions of this paragraph shall govern and control, (b) neither Maker nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal balance or refunded to Maker, at the option of the Payee, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof. It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under this Note or any Security Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness evidenced hereby, all interest at any time contracted for, charged or received from Maker or otherwise by Payee in connection with such indebtedness; provided, however, that if any applicable state law is amended or the law of the United States of America preempts any applicable state law, so that it becomes lawful for the Payee to

receive a greater interest per annum rate than is presently allowed, the Maker agrees that, on the effective date of such amendment or preemption, as the case may be, the lawful maximum hereunder shall be increased to the maximum interest per annum rate allowed by the amended state law or the law of the United States of America.

The Maker and all sureties, endorsers, guarantors or any others (each such person, other than the Maker, an "Obligor") who may at any time become liable for the payment hereof jointly and severally consent hereby to any and all extensions of time, renewals, waivers or modifications of, and all substitutions or releases of, security or of any party primarily or secondarily liable on this Note or any Security Agreement or any term and provision of either, which may be made, granted or consented to by Payee, and agree that suit may be brought and maintained against any one or more of them, at the election of Payee without joinder of any other as a party thereto, and that Payee shall not be required first to foreclose, proceed against, or exhaust any security hereof in order to enforce payment of this Note. The Maker and each Obligor hereby waives presentment, demand for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, and all other notices in connection herewith, as well as filing of suit (if permitted by law) and diligence in collecting this Note or enforcing any of the security hereof, and agrees to pay (if permitted by law) all expenses incurred in collection, including Payee's actual attorneys' fees. Maker and each Obligor agrees that fees not in excess of twenty percent (20%) of the amount then due shall be deemed reasonable.

THE MAKER HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS NOTE, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN MAKER AND PAYEE RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN MAKER AND PAYEE. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.) THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS NOTE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

This Note and any Security Agreement constitute the entire agreement of the Maker and Payee with respect to the subject matter hereof and supersedes all prior understandings, agreements and representations, express or implied.

No variation or modification of this Note, or any waiver of any of its provisions or conditions, shall be valid unless in writing and signed by an authorized representative of Maker and Payee. Any such waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given.

Any provision in this Note or any Security Agreement which is in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

(Witness) _____

(Print name) _____

(Address) _____

HBA Cast Products Co., Inc.

Name: John P Dekko

Title: President

Federal Tax ID #: 041413760

Address: 262 Liberty Street, Springfield, Hampden County, MA 01104

The undersigned hereby unconditionally guarantees the prompt payment of the principal of and the interest on the foregoing PROMISSORY NOTE when and as due in accordance with its terms, and hereby also accepts the other terms thereof, including the waiver of diligence, presentment, protest or notice of nonpayment or of any kind whatsoever or dishonor, as well as any requirement that the holder exhaust any right or take any action against the MAKER of the foregoing PROMISSORY NOTE and hereby consents to any extension of time or renewal thereof.

This PROMISSORY NOTE is composed of Two (2) pages.

IN GUARANTEE:
HBA CAST PRODUCTS MEXICO, S. DE R.L. DE C.V.

By: John Pascal Dekko
Title: Attorney-in-fact

C

(3/91)

# COLLATERAL SCHEDULE NO. 1

**THIS COLLATERAL SCHEDULE NO. 1** is annexed to and made a part of that certain Master Security Agreement dated as of _____ between General Electric Capital Corporation, together with its successors and assigns, if any, as Secured Party and HBA Cast Products Co., Inc. as Debtor and describes collateral in which Debtor has granted Secured Party a security interest in connection with the Indebtedness (as defined in the Security Agreement) including without limitation that certain Promissory Note dated _____ in the original principal amount of $_____.

| Quantity | Manufacturer | Serial Number | Year/Model and Type of Equipment |
|---|---|---|---|
| 1 | HPM | R98397 | 1000 Ton Die Cast Machine |
| 1 | HPM | N/A | 1000 Ton Die Cast Machine |
| 1 | HPM | N/A | 1000 Ton Die Cast Machine |
| 1 | HPM | R98393 | 900 Ton Die Cast Machine |
| 1 | HPM | R98396 | 900 Ton Die Cast Machine |
| 1 | HPM | R98393 | 400 Ton Die Cast Machine |
| 1 | HPM | R98394 | 400 Ton Die Cast Machine |
| 7 | Custom | | Gas Furnaces |
| 1 | DTI | 89161 | Model 25 Die Cast Machine |
| 4 | Metal Mechanics | | 50 Ton 4 Post Hydraulic Trim Press |
| 2 | Metal Mechanics | | 25 Ton 4 Post Hydraulic Trim Press |
| 1 | Teehomec | | 75 Ton 4 Post Hydraulic Trim Press |
| 3 | Advance | | Ladles Model SL-1200 |
| 1 | Advance | | Ladler Model SL-1200 |
| 1 | Advance | | Ladler Model SL-1200 |
| 2 | Advance | | Ladlers Model SL-650 |
| 2 | Advance | | Reciprocator Sprayers Model SR-1150 |
| 3 | Advance | | Reciprocator Sprayers Model SR-1155 |
| 1 | Advance | | Reciprocator Sprayer Model SR-1155 |
| 1 | Advance | | Reciprocator Sprayer Model SR-1155 |
| 1 | Brandon Technologies | | Shot Scope |
| 1 | Uson | | Leak Tester Model 4300 |
| 1 | Custom | | Hub Gauge |
| 3 | Okuma Howa | 2R199, 28221, 28227 | CNC Turning Centers Model HL-JR w/ Chip Conveyors and Fanuc 21TB Controls |
| 2 | Atlas Copco | | 75 HP Air Compressors |
| 1 | | | Cooling Tower |
| 1 | | | Hydraulic Surface Grinder |
| 2 | w/Allen | | Floor Type Drill Presses |
| 3 | | | Bench Type Drill Presses |
| 1 | | | Oil Heat/Lubrication System |
| 1 | Clausing | | Keratia Bertical Milling Machine |
| 1 | Clausing | | Colchester Engine Lathe |
| 1 | | | Electric Furnaces |
| 2 | Procunier | | Drilling Machines |
| 1 | | | Radial Arm Drill Press |
| 2 | | | Floor Type Drill Presses |
| 1 | Deka | | Vertical Band Saw |
| 1 | Supermax | 1085 | 1999 CNC Vertical Machining Center Model FV-102A w/Fanuc Controls |
| 1 | Supermax | 906011 | 2000 CNC Vertical Machining Center Model FV-102A w/Fanuc Controls |
| 2 | Miller | | Welding Machines |
| 1 | Chrysler | | 1999 Voyager |
| 1 | Pontiac | | 1999 Sedan |
| 2 | Suhner | | 2000 Tapping Machines |
| 1 | Ohaus | | 1999 Digital Scale |
| 1 | Sensortronics | | 1999 Digital Platform Scale |
| 1 | Clark | Y355-003MEF-255D | 4500 LB Electric Forklift Truck |
| 1 | | | 1999 10 Ton Bridge Crane |
| 1 | | | 1999 1000 LB Electric Pallet Truck |
| 3 | Rigid | | Portable Vises |
| 2 | Ideal | 160374, 160373 | 5000 LB Pallet Trucks |
| 1 | | | Storage Tank and Accessories |
| 1 | | | Vibratory Finishing Machine Model VBTM-100 |



| Quantity | Manufacturer | Serial Number | Year/Model and Type of Equipment |
|---|---|---|---|
| 1<br>Lot | Lynx | | CMM Layout Machine<br>Office Furniture, Computers, Lunch Room and Kitchen<br>Equipment |

**SECURED PARTY:**

General Electric Capital Corporation

By: _____

Title: _Senior Risk Analyst_

Date: _____

**DEBTOR:**

KBA Can Products Co., Inc.

By: _____

Title: _President_

Date: _____



D



3007 (3/91) 4116434001

Date _____

General Electric Capital Corporation
44 Old Ridgebury Road
Danbury, CT 06810-5105

Gentlemen:

You are hereby irrevocably authorized and directed to deliver and apply the proceeds of your loan to the undersigned evidenced by that Note dated
_____ and secured by that Security Agreement or Chattel Mortgage dated _____, as follows:

HBA Cast Products Co., Inc                    $1,300,000.00
262 Liberty Street
Springfield, MA 01104

This authorization and direction is given pursuant to the same authority authorizing the above-mentioned borrow

Very truly yours.

HBA Cast Products Co., Inc

By: _____

Title: __President__



E

RECYCLED

(3/91) 4116434001

## CERTIFICATE OF DELIVERY/INSTALLATION

Undersigned hereby certify that all equipment and property covered by a Security Agreement or Chattel Mortgage dated _____ and Note dated _____, between General Electric Capital Corporation (together with its successors and assigns, if any, "Secured Party") and undersigned has been delivered to undersigned and found satisfactory, and that any and all installation has been satisfactorily completed. In order to induce Secured Party to advance the loan evidenced by such Note, undersigned hereby waive any defense, counterclaim or offset thereunder as against Secured Party.

RBA Cast Products Co., Inc.

By: _____

Name: John P. Delisa

Title: President

Date: _____



** TOTAL PAGE.12 **

F

 *We bring good things to life.*

GE Commercial Equipment Financing
44 Old Ridgebury Road
Danbury, CT 06810-5105

October 30, 2003

HBA CAST PRODUCTS CO., INC.
Attn : PAUL CUMMINGS
Fax : 203-796-5504
Ref : 4116434-001

The payoff on the above referenced account expires December 01, 2003. The breakdown is listed below.

| | | |
|---|---|---:|
| Buyout | $ | 776,376.11 |
| Pre-Payment Premium | $ | 13,000.00 |
| Late Charges | $ | 4,099.62 |
| Miscellaneous NSF Fees | $ | 300.00 |
| **Total** | **$** | **793,775.73** |

Please notify us of your intention to payoff and remit payment as instructed below :

**Mailing**
GE Commercial Equipment Financing
500 First Avenue
ARA Lockbox - 644234
Pittsburgh, PA 15219
Attn : A/R AMO - AAJ

*Please enclose a copy of this letter with the check*

**Wire**
Deutsche Trust Company Americas
60 Wall Street
New York, NY 10005
A/C No. 502 02 962
ABA No. 021-001-033
GE CEF Main Despository Account

Wire Comment  4116434-001

## NOTICES

If the collateral securing the above-referenced account secures any other account(s) that you have with GE Capital, then the payoff of the above-referenced account will NOT, in the absence of GE Capital's express written agreement to do so, terminate GE Capital's security interest in such collateral nor obligate GE Capital to terminate such security interest. If the collateral securing the above-referenced account does not secure any other account(s) that you have with GE Capital, then Certified funds (wire transfer, bank or certified check) are required if you would like to have any liens/titles released within a commercially reasonable time. Providing that any and all amounts paid have been recognized as good and available funds. Otherwise, liens/titles will be released thirty days after receipt of your company check. If you have any questions regarding this statement, please contact the undersigned.

Remittance of the "Total" amount shown above signifies your agreement with the dollar amounts and terms contained within this document.

ATTENTION: You currently participate in our Electronic Payment System for Pre-Arranged Payments (Debits), please notify us of your intention to payoff by November 27, 2003 or your debit will be withdrawn on your next due date.

If you have any questions, please contact us at cefpayoffs@gecapital.com or ( 800 ) YES - GECC

Sincerely,

*A. Jhujhuwala*
Payoff Specialist

